IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RONALD DEAN WHITTENBERG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-16-411-RAW-KEW |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Ronald Dean Whittenberg ("Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 56 years old at the time of the ALJ's decision. Claimant obtained a GED. Claimant has worked in the past as an electrician/journeyman wireman. Claimant alleges an inability to work beginning July 1, 2007 due to limitations caused by back and knee pain and neck/whiplash problems.

### Procedural History

On March 14, 2013, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. On March 29, 2013, he filed for supplemental

security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On January 28, 2015, a hearing was held before ALJ Edmund Werre in Tulsa, Oklahoma. By decision dated March 19, 2015, the ALJ found that Claimant was not disabled during the relevant period and denied Claimant's request for benefits. On July 28, 2016, the Appeals Council denied review of the ALJ's decision. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform his past relevant work.

### Errors Alleged for Review

Claimant, acting *pro se* in this appeal, asserts the ALJ committed error in failing to properly consider the evidence of his disability and arriving at an RFC which was not supported by the medical record.

### Consideration of the Medical Record

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease of the cervical

spine, left knee impairment, and obesity. (Tr. 12). He concluded Claimant retained the RFC to perform less than a full range of medium work with no more than occasional lifting of 50 pounds, no more than frequent lifting or carrying of up to 25 pounds, standing/walking for six hours out of an eight hour workday, and sitting for six hours out of an eight hour workday. (Tr. 13). The ALJ found at step four that Claimant could perform his past relevant work as an electrician.  After consultation with a vocational expert, the ALJ alternatively found Claimant could perform the representative jobs of janitor, hand packager, arcade attendant, and ticket taker, all of which the vocational expert testified existed in sufficient numbers in the national and regional economies. (Tr. 17). As a result, the ALJ determined Claimant had not been under a disability from July 1, 2007 through the date of the decision. Id.

Claimant contends the ALJ failed to consider the severity and totality of his limiting conditions in formulating the RFC. Claimant alleges an onset date of July 1, 2007 which corresponds with the date of an automobile accident in which Claimant allegedly received injuries to his neck and left shoulder.  Claimant was attended by Dr. Charles B. Fullenwider in September of 2007. Dr. Fullenwider noted Claimant's involvement in an automobile accident on July 12, 2007.  An MRI at the time of the accident revealed a

left paracentral disc protrusion at C3-4 with narrowing at the left at C3-4 neural foramina with mild narrowing and very minimal left changes. The MRI also showed mild degenerative changes and some asymmetry at C3-4 to the left. No cord compression or frank nerve root compression were noted. Claimant did not complain of radicular pain or numbness or tingling. Claimant experienced no motor changes. Claimant reported a history of six prior automobile accidents and performed construction work most of his life. (Tr. 309).

Dr. Fullenwider noted Claimant had limited range of motion of his neck with approximately 50% flexion, 25% extension before complaints of pain. Lateral rotation to the left caused more pain than to the right and both had about 50-60% of normal motion before complaints of pain. He found Claimant experienced spasms of the left posterior cervical strap muscles towards the attachment of the skull base. No trapezius spasm was noted. No interscapular spasm was noted. Dr. Fullenwider found Claimant had some point tenderness in the upper cervical spine and in the midline. Claimant's reflexes and motor strength was normal or near normal. He recommended Claimant be placed on anti-inflammatory/pain medication as well as physical therapy. Claimant was not considered an operative candidate. (Tr. 308).

In October of 2007, Dr. Fullenwider found Claimant "much

improved" with significant improvement in range of motion. Claimant had essentially full flexion, full extension, lateral rotation to the right of 90-100% full, lateral rotation to the left of 85-95% full with only minimal complaints of discomfort. Muscle spasms were significantly improved with no tenderness to palpation and only minimal muscle tightness. Dr. Fullenwider concluded Claimant could return to his job as an electrician with a full release. (Tr. 307).

Claimant provided no evidence of medical treatment from October of 2007 through January 18, 2015. On June 8, 2013, Claimant underwent a consultative evaluation by Dr. William Cooper. Claimant told Dr. Cooper he had not received any medication for his condition over the preceding 10-15 years "because he doesn't like to go to the doctor." (Tr. 311).

Upon examination, Dr. Cooper found Claimant had no point tenderness, adequate peripheral pulses, no edema of the hands, knees, or pretibial areas. Grip strength was 5/5 bilaterally strong and firm. Claimant was able to perform both gross and fine tactile manipulation. Finger to thumb opposition was adequate. Claimant reported pain with range of motion of the left knee but Dr. Cooper found he had full passive range of motion. Knees showed no effusion or edema and were stable in all range of motion exercises. Great toe strength was equal bilaterally.

Cervical spine was tender to palpation bilaterally with limited range of motion associated with pain. Thoracic spine was tender to palpation bilaterally with full range of motion. Lumbar-sacral spine was tender to palpation bilaterally with limited range of motion associated with pain. Straight leg raising reflex was negative in both the sitting and supine positions. Claimant's gait was safe and stable with slower speed than normal. He did not limp and did not require an assistive device to ambulate. No identifiable muscle atrophy was noted. Heel/toe walking was normal. Tandem gait was within normal limits. (Tr. 313).

On July 25, 2013, Dr. Maria Pons completed a physical residual function capacity assessment on Claimant. Dr. Pons concluded Claimant could occasionally lift/carry 50 pounds, frequently lift/carry 25 pounds, stand/walk about six hours in an eight hour workday, sit about six hours in an eight hour workday and engage in unlimited pushing and pulling within the lift/carry limitations. No additional postural, manipulative, visual, communicative, or environmental limitations were noted. (Tr. 70).

Claimant also had a mental consultative examination scheduled which he did not attend. (Tr. 68).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287

F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence, including the opinions of Dr. Cooper and the reviewing agency consultants.

Claimant has not alleged that the analysis at step four and five were erroneous. The findings of the ALJ were supported by the testimony of the vocational expert.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore,

the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**.

The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 16th day of January, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE